IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TERRY L. JONES,                          )
                                         )
              Plaintiff,                 )
                                         )    CIVIL ACTION
v.                                       )
                                         )    No. 06-4129-JAR-JTR
                                         )
MICHAEL J. ASTRUE,[1]                    )
Commissioner of Social Security,         )
                                         )
              Defendant.                 )
_____  )

REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the
Commissioner of Social Security (hereinafter Commissioner)
denying disability insurance benefits and supplemental security
income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the
Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and
1382c(a)(3)(A)(hereinafter the Act).  The matter has been
referred to this court for a report and recommendation.  The
court recommends the Commissioner's decision be REVERSED and
JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C.

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is
substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C.
§ 405(g), no further action is necessary.

§ 405(g) REMANDING the case for further proceedings in accordance with this opinion.

## I.   Background

Plaintiff's applications for disability insurance benefits and supplemental security income alleged disability beginning Apr. 2, 2004, and were denied initially and upon reconsideration. (R. 25, 86, 87, 382, 388).   At plaintiff's request a hearing was held before an Administrative Law Judge (ALJ) on Feb. 11, 2005. (R. 25, 105, 33-85).   Plaintiff was represented by an attorney at the hearing, and testimony was taken from plaintiff, his wife, and a vocational expert.   (R. 25, 33, 34).   On Mar. 4, 2005, the ALJ issued a decision in which she found plaintiff not disabled within the meaning of the Act and denied his applications.

Specifically, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date and has a combination of impairments which is severe within the meaning of the Act.   (R. 26).   She found plaintiff's impairments include:   sinus bradychardia; status post two arthroscopic surgeries on the right knee; sleep apnea controlled with a CPAP machine; asthma/chronic obstructive pulmonary disease controlled with inhalers; and a history of narcolepsy.   (R. 32).   She found that none of plaintiff's impairments, singly or in combination meet or equal any listed impairment, and she specifically considered Listings 4.05, 11.03, and 3.10.   (R. 26).

-2-

The ALJ summarized the evidence including testimony from plaintiff and his wife, medical evidence, evidence of work history, the medical opinion of plaintiff's treating physician, Dr. Carson, and the medical opinion of the state agency physicians who had reviewed the evidence at the initial and reconsideration levels.  (R. 26-31).  She determined that Dr. Carson's opinion is not "persuasive evidence in this case" (R. 30), and assessed plaintiff with the residual functional capacity (RFC) "to lift up to 40 pounds maximum, stand for 6 hours a day, sit for 6 hours a day, can occasionally kneel, squat and climb stairs and ladders and cannot work around dangerous machinery." (R. 31).  Based upon this RFC assessment and the testimony of the vocational expert, the ALJ determined plaintiff is able to perform his past relevant work as a cashier, custodian, and stockroom coordinator.  (R. 31)  Consequently she found that plaintiff is not disabled within the meaning of the Act, and denied plaintiff's applications.  (R. 31, 32).

Plaintiff submitted additional evidence to the Appeals Council and sought its review of the ALJ decision.  (R. 17, 389-443).  The additional evidence was accepted by the Appeals Council and made a part of the administrative record.  (R. 12).  However, plaintiff's request for review was denied.  (R. 9-11).  Therefore, the ALJ decision is the final decision of the

-3-

Commissioner.   (R. 9); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003).   Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which

prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920 (2004).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51.  If claimant's impairments do not meet or equal the severity of a listed impairment, the Commissioner assesses

-5-

claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment
is used at both step four and step five of the process.  Id.

    After assessing claimant's RFC, the Commissioner evaluates
steps four and five, whether the claimant can perform his past
relevant work, and whether he is able to perform other work in
the economy.  Williams, 844 F.2d at 751.  In steps one through
four the burden is on claimant to prove a disability that
prevents performance of past relevant work.  Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the economy within plaintiff's capacity.  Id.;
Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

    Plaintiff claims that the ALJ erred:  at step two in failing
to specify the impairments she found "severe" within the meaning
of the Act (Pl. Br. 20-21); at step three in finding plaintiff's
impairments do not equal the severity of Listing 4.05 (Pl. Br.
16-20); in weighing the medical opinions of record (Pl. Br. 22,
26); and in otherwise assessing plaintiff's RFC.  (Pl. Br. 22-
26).  The Commissioner argues that plaintiff did not meet his
step three burden to prove his condition equals all of the
criteria of Listing 4.05; argues that the ALJ properly weighed
the treating physician's opinion; and argues that the ALJ's RFC
assessment is supported by the record evidence.  The Commissioner
did not specifically address plaintiff's step two argument and

did not address the ALJ's evaluation of the medical opinions other than that of the treating physician.  The court will address plaintiff's arguments in the order they would be reached in applying the sequential evaluation process.

**III. Step Two Evaluation**

Plaintiff claims the ALJ erred in failing to specify the impairments she found "severe" within the meaning of the Act. (Pl. Br. 20).  Specifically, he argues that it is unclear from the ALJ's Finding no. 4 whether she found all of plaintiff's impairments were severe.

At step two an ALJ must consider and determine whether the claimant's impairment or combination of impairments significantly limits plaintiff's ability to do basic work activities.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  To establish a "severe" impairment at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing.  Id. He need only show that an impairment or combination of impairments would have more than a minimal effect on his ability to do basic work activities.  Williams, 844 F.2d at 751. However, he must show more than the mere presence of a condition or ailment.  Id. (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

The regulations contemplate that an ALJ will consider whether a claimant's impairments in combination are "severe."

-7-

"If you do not have any impairment or <u>combination of impairments</u> which significantly limits your . . . ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c)(emphasis added); <u>see also</u> 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)("If you do not have a severe medically determinable . . . impairment . . . or a <u>combination of impairments</u> that is severe . . ., we will find that you are not disabled)(emphasis added).  Indeed, the regulations require that where a claimant has multiple impairments, the Commissioner "will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."  20 C.F.R. §§ 404.1523, 416.923: <u>see also</u> 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(f)("the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In Finding no. 1, the ALJ noted that plaintiff met the insured status requirements.  (R. 31).  Finding no. 2 consists of the ALJ's step one finding that plaintiff has not engaged in

substantial gainful activity.  (R. 31).  At no. 3, the ALJ found plaintiff collected unemployment insurance payments and looked for work during the alleged period of disability, and at no. 4, the ALJ found:

> Medical evidence establishes that claimant has sinus bradiacardia [sic] with a first degree AV block which does not significantly restrict claimant with other cardiac testing which was negative; is status post two arthroscopic surgeries in the right knee in May and December 2003, with return to work thereafter without restrictions in 2004; has sleep apnea controlled by the use of a CPAP machine when claimant uses it; has a history of "narcolepsy" with no current treatment for narcolepsy and asthma/chronic obstructive pulmonary disease, controlled with inhalers and claimant was a smoker, but he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

(R. 32).  Finding no. 5 reflects the ALJ's RFC assessment, Finding no. 6 is her finding that plaintiff is able to perform his past relevant work as a cashier, stockroom coordinator or custodian, and at no. 7, the ALJ found plaintiff is not "disabled" within the meaning of the Act.  (R. 32).

As plaintiff's argument implies, Finding no. 4 includes the ALJ's step two finding.  In context, this implication is confirmed by noting that the "Findings" are listed in order of the sequential evaluation process, and finding no. 4 (which also contains the step three determination) appears after the step one finding and before the RFC finding.  (R. 31-32).  Moreover, the entire decision is written consistent with sequential evaluation

process order, and "Page 2 of 2"[2] in the decision contains the ALJ's analyses relating to steps one, two, and three of the process and contains the discussion from which Finding no. 4 is drawn.  (R. 26).

Although the ALJ did not specify in Finding no. 4 that she found the listed combination of impairments "severe" within the meaning of the Act, the decision as a whole reveals that she did. The question at step two is whether a claimant has a medically determinable impairment or combination of impairments which significantly limits his ability to do basic work activities (therefore being "severe").  20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).  In this case, the ALJ stated, "One or more of these disorders impose some limitations on claimant's ability to function in the workplace."  (R. 26).  This statement shows the ALJ's acknowledgment that the impairments listed constitute a combination of impairments which significantly limits plaintiff's ability to do basic work activities and is, therefore, "severe" within the meaning of the Act and regulations.

As plaintiff points out, the ALJ stated that because the disorders listed impose limitations on plaintiff's ability to work, plaintiff "has an impairment as that term is defined in the

---

[2]The decision at issue consists of eight pages but the second page is numbered "Page 2 of 2."  (R. 26).

regulations." (Pl. Br. 21)(quoting (R. 26))(emphasis added by the court). An "impairment" must be shown to "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404. 1508, 416.908. As discussed above however, a "severe" impairment is one which imposes significant limitations on the ability to work. Had the ALJ found plaintiff's combination of impairments not to be "severe" within the meaning of the Act, she would have found plaintiff not disabled at step two and there would have been no need to continue with the sequential evaluation process. Williams, 844 F.2d at 750 ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").

The court finds the language quoted by plaintiff contains a typographical error in which the ALJ omitted the qualifier "severe." Considering the decision as a whole, the court finds the ALJ intended to state "One or more of these disorders impose some limitations on claimant's ability to function in the workplace and he therefore has a[ severe] impairment as that term is defined in the regulations," instead of the statement as quoted above by plaintiff. The court's understanding is further supported by the fact that neither "impairment" or "severe impairment" are terms which are specifically defined in the

regulations.   20 C.F.R. §§ 404.2, 404.1502, 416.120, 416.902.
Rather, each term is defined by a group of regulations which
explain how the determination of an "impairment" or a "severe
impairment" will be made.   20 C.F.R. §§ 404.1508-09, 404.1520-23,
416.908-09, 416.920-23.

To the extent plaintiff is arguing that it was error to fail
to make an individual severity finding for each impairment listed
by the ALJ, the court does not agree.   As stated above, the
regulations require that where a claimant has multiple
impairments, the Commissioner "will consider the combined effect
of all of your impairments without regard to whether any such
impairment, if considered separately, would be of sufficient
severity."   20 C.F.R. §§ 404.1523, 416.923; see also 42 U.S.C.
§§ 423(d)(2)(C), 1382c(a)(3)(F)("the Secretary shall consider the
combined effect of all of the individual's impairments without
regard to whether any such impairment, if considered separately,
would be of such severity").   Here, the ALJ considered
plaintiff's impairments in combination as required by the
regulations and found them to be "severe."   The court finds no
error in the step two analysis.

**IV.   Step Three Evaluation**

Plaintiff "has the burden at step three of demonstrating,
through medical evidence, that his impairments 'meet all of the
specified medical criteria' contained in a particular listing."

-12-

<u>Riddle v. Halter</u>, No. 00-7043, 2001 WL 282344 at *1 (10th Cir.
Mar. 22, 2001) (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530
(1990) (emphasis in <u>Zebley</u>)).  Plaintiff claims the ALJ erred at
step three in failing to consider whether plaintiff's condition
<u>equaled</u> Listing 4.05.  (Pl. Br. 17).  To qualify for benefits by
showing that an impairment, or combination of impairments, is
equivalent to a listed impairment, a claimant must present
medical findings equal in severity to all the criteria for the
most similar listed impairment.  <u>Zebley</u>, 493 U.S. at 531; <u>see
also</u>, 20 C.F.R. §§ 404.1526(a), 416.926(a) (for an impairment to
be equivalent to a listed impairment, medical findings must be
"at least equal in severity and duration to the listed
findings").  Medical findings are "symptoms, signs, and
laboratory findings."  20 C.F.R. §§ 404.1528, 416.928.
Equivalence is based only upon medical findings supported by
medically acceptable clinical and laboratory diagnostic
techniques.  20 C.F.R. §§ 404.1526(b), 416.926(b).

    Therefore, to prevail on his claim of equivalence, plaintiff
must show record evidence of symptoms, signs, or laboratory
findings equal in severity and duration to <u>all</u> the criteria of
Listing 4.05:

       <u>Recurrent arrhythmias</u>, not related to reversible
       causes, such as electrolyte abnormalities or digitalis
       glycoside or antiarrhythmic drug toxicity, resulting in
       uncontrolled (see 4.00A3f), recurrent (see 4.00A3c)
       episodes of cardiac syncope or near syncope (see
       4.00F3b), despite prescribed treatment (see 4.00B3 if

                              -13-

there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

Revised Medical Criteria for Evaluating Cardiovascular Impairments, 71 Fed. Reg. 2312, 2335 (Jan. 13, 2006)(codified at 20 C.F.R., Pt. 404, Subpt. P, App. 1, Note, § 4.05 (2006)).[3]

The ALJ determined that plaintiff's condition does not meet or equal any listing including Listing 4.05, because no physician opined that plaintiff's condition meets or equals any listing and because plaintiff had "no syncope or near-syncope and . . . had one Holter monitor in 1996 only." (R. 26). As defined in the final rules cited by plaintiff, syncope is a "loss of consciousness or a faint," and near-syncope is "a period of altered consciousness;" "[i]t is not merely a feeling of light-headedness, momentary weakness, or dizziness." 71 Fed.

_____

[3]Plaintiff cites to the Cardiovascular System Listings effective Apr. 13, 2006. (Pl. Br. 17); see, 71 Fed. Reg. 2312 (Jan. 13, 2006); 20 C.F.R., Pt. 404, Subpt. P, App. 1, Note (2006). In promulgating the final rules at issue, the Commissioner explained he would apply the final rules to "new applications filed on or after the effective date" of the rules, and to claims decided after remand from a Federal court, but that he expected "the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the administrative law judge's (ALJ) decision." 71 Fed. Reg. at 2313. In his response brief, the Commissioner cited to the Listing in effect at the time of the ALJ decision, but did not object to plaintiff's use of the new Listing. (Comm'r Br. 6). The court uses the new Listing as cited by plaintiff in order to demonstrate that there is no error at step three even when applying the new Listing.

Reg. at 2331(codified at 20 C.F.R., Pt. 404, Subpt. P, App. 1,
Note § 4.00F3b (2006)).

Consequently, to prevail on his claim of equivalence,
plaintiff must show record evidence of symptoms, signs, or
laboratory findings equal in severity and duration to a faint, a
loss of consciousness, or a period of altered consciousness.
Plaintiff presented additional evidence to the Appeals Council
including a Holter monitor report dated Apr. 1, 2005 (R. 399-409)
and a cardiovascular consultation by Dr. Rosamond[4] dated May 17,
2005.  (R. 410-11).  The Appeals Council accepted the additional
evidence and issued an order making it a part of the
administrative record in this case.  (R. 12).  As plaintiff
points out, the court interprets these facts "as an implicit
determination [plaintiff] had submitted qualifying new evidence
for consideration."  Martinez v. Barnhart, 444 F.3d 1201, 1207
(10th Cir. 2006).  Such evidence, made a part of the
administrative record by the Appeals Council, will be considered
by the court in its review of the Commissioner's decision.
O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).

Plaintiff points to Dr. Rosamond's statement, "From a
cardiovascular standpoint, [plaintiff] does not complain of

---

[4]In his brief, plaintiff refers to Dr. Rosamond's report as
"an evaluation by Dr. Carson" (plaintiff's treating physician).
(Pl. Br. 19)(citing (R. 410-11)).  The record cited, however, is
a report provided by Dr. Rosamond over Dr. Rosamond's signature
block, and is a report addressed to Dr. Carson.

complete syncope but he does have episodes where he feels like he
may pass out - essentially pre-syncopal symptomatology." (R.
410).  The doctor concludes, "Overall, he has some syncopal-like
symptomatology that I suspect is partly related to significant
bradyarrhythmias." (R. 411).  Based upon this evidence,
plaintiff claims his condition equals Listing 4.05.  (Pl. Br. 19-
20).  As noted above, plaintiff has the burden of proof at step
three.  Riddle, 2001 WL 282344 at *1.  Moreover, a determination
of equivalence must be based only on medical findings.  20 C.F.R.
§§ 404.1526(b), 416.926(b).  Plaintiff does not point to record
evidence or other admissible authority demonstrating how "pre-
syncopal symptomatology" or "syncopal-like symptomatology" is a
symptom equal in severity and duration to a faint, a loss of
consciousness, or a period of altered consciousness, rather than
a symptom more consistent with a feeling of light-headedness,
momentary weakness, or dizziness.  Further, that determination is
a question requiring medical expertise that neither this court
nor plaintiff and his counsel possess.  Therefore, plaintiff has
not met his burden to show that his condition equals Listing
4.05.  Considering all the evidence (including the additional
evidence presented to the Appeals Council) the court finds, as
did the ALJ, that the record evidence does not include evidence
of syncope or near-syncope nor any opinion from a doctor that

plaintiff's condition meets or equals Listing 4.05.  The court
finds no error at step three.

## V.    Evaluation of Medical Opinions

Plaintiff claims the ALJ did not properly weigh the medical
opinions of her treating physician, Dr. Carson, or of the state
agency non-examining physicians, and did not assign specific
weight to any medical opinion in the record.  (Pl. Br. 22-26);
(Reply 2-3).  In his discussion of the ALJ's RFC assessment, the
Commissioner in general terms implies that the ALJ properly
weighed the medical opinions, and argues that the ALJ properly
discounted Dr. Carson's opinion.  (Comm'r Br. 10-12).  Finding
error in the ALJ's evaluation of the medical opinions of both Dr.
Carson and of the state agency consultants, the court recommends
remand for a proper evaluation of the medical opinions.

Here, the ALJ stated, "A reviewing physician in Exhibit 8F
has provided an opinion inconsistent with disability." (R. 31).
She also found that Dr. Carson's treating source opinion was not
persuasive evidence in this case.  (R. 31).  She gave several
reasons to reject Dr. Carson's opinion: (1) although Dr. Carson
said his opinion was based on narcolepsy and two abnormal sleep
studies, there was only one sleep study documented in the record;
(2) the one sleep study in the record did not reveal narcolepsy;
(3) if plaintiff has had narcolepsy since 2001, it did not
preclude substantial gainful activity between 2001 and 2003;

-17-

(4) the sleep study shows plaintiff's sleep apnea is controlled with use of a CPAP machine; (5) Dr. Carsons's opinion of disability is inconsistent with earlier notes in which the doctor stated plaintiff may be able to do other types of work; (6) there is no objective basis for Dr. Carson's sitting and standing limitations; (7) after his knee surgeries, plaintiff was released to return to work; (8) there is no objective basis for Dr. Carson's opinion that plaintiff would miss more than four days of work per month; and (9) the opinion that plaintiff would miss more than four days of work per month "appears to be based entirely on claimant's subjective complaints."  (R. 30).

Plaintiff does not argue that the ALJ should have given controlling weight to the treating physician's opinion. Nonetheless, if a treating source opinion is not given controlling weight, the inquiry does not end.  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  Where the treating physician's opinion is not given controlling weight, all of the medical opinions must be evaluated pursuant to the regulatory factors provided in 20 C.F.R. § 404.1527 and 416.927. Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2007); see also, Watkins, 350 F.3d at 1300(even when not given controlling weight, the treating source opinion is worthy of deference and must be weighed in accord with the regulatory factors).

If the opinions of non-treating sources are to be given greater weight than that of a treating source, "the ALJ's task is to examine the other physicians' reports 'to see if [they] 'outweigh[]' the treating physician's report, not the other way around.'"  Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 289-290 (10th Cir. 1995)(quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)).  Moreover, opinions of state agency physicians must be evaluated using the regulatory factors, and the ALJ must explain in the decision the weight given those opinions.  20 C.F.R. § 404.1527(f)(2)(ii & iii).

The ALJ noted that the state agency reviewing physicians provided an opinion that is inconsistent with disability, (R. 31), but she did not explain the weight given that opinion in her analysis and did not explain how that opinion outweighs the opinion of the treating physician.  In fact, those physicians assessed limitations not accepted by the ALJ.  They opined that plaintiff has **no** exertional limitations; can **never** climb ladders, ropes, and scaffolds; and must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, and poor ventilation, etc.  (R. 272-79).

SSR 96-8P includes a narrative discussion requirement for an RFC assessment.  West's Soc. Sec. Reporting Serv., Rulings at 149 (Supp. 2007).  The discussion is to cite specific medical facts to describe how the evidence supports each conclusion, discuss

how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.  Id. at 150.  Here, the ALJ did not explain how the ambiguities and material inconsistencies between the medical opinions of the treating source and the non-examining sources were resolved, did not explain why she did not adopt certain portions of the opinions of the non-examining sources, and did not explain the specific basis for the limitations expressed in her RFC assessment although she rejected the treating physician's opinion and significant portions of the state agency reviewers' opinions.

Further, the ALJ's evaluation of the treating source opinion is not supported by substantial evidence in the record.  First, the ALJ erred in discounting Dr. Carson's opinion because the opinion relied upon two abnormal sleep studies but only one study was included in the record.  (R. 30).  As plaintiff points out, both sleep studies were included in the record.  (R. 195-97) (Polysomnography, dated Oct. 15, 2002); (R. 198-202) (Polysomnography, dated Jan. 23, 2001).  The ALJ cited to Exhibit 4F in the decision (R. 30), but apparently did not realize that

the exhibit contained both sleep studies in addition to an MRI report and discharge instructions relating to a cardiac cathertization.  (R. 194-203).

Second, the ALJ erred in stating that the sleep study showed plaintiff's sleep apnea was controlled with use of a CPAP machine.  (R. 30).  Although the evidence cited by the ALJ literally states that the sleep apneas were controlled by use of the CPAP machine, the ALJ failed to account for the complete findings of the sleep study.  On the page to which the ALJ cited, she relied upon a portion of a sentence without acknowledging the rest of the sentence and without explaining how she arrived at a finding that the sleep study contradicts Dr. Carson's opinion. The complete sentence upon which the ALJ relied states, "While the use of CPAP at low pressures controlled the apneas, its use had no beneficial effect on the borderline SpO2 and no clear improvement in sleep quality while possibly worsening the baseline bradycardia." (R. 196).  In the "Treatment" recommendation, the study noted, "Only if sleep/awake symptoms are significant, would I consider the use of CPAP in this man. That is, his having unintentional naps in the midst of activities despite regular sleep hours, not explained by medication side-effects or medical problems." (R. 197).  The ALJ did not even acknowledge an ambiguity in the report and certainly did not

explain how the ambiguity was resolved or how she concluded that the report contradicts Dr. Carson's opinion.

Finally, the court finds plain error in the evaluation of Dr. Carson's opinion which was not suggested in plaintiff's briefs.  Because the case must be remanded for proper evaluation of the medical opinions and because this appears to be an error continuing to appear in Social Security decisions despite controlling Tenth Circuit precedent and clear direction from this court, the court will address it here.  The decision states, "Dr. Carson's estimation that claimant would miss more than four days of work per month . . . appears to be based entirely on claimant's subjective complaints." (R. 30).

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). Where the ALJ has no evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, her conclusion to that effect is merely speculation which falls within the prohibition of McGoffin. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004).  Such a conclusion, if made, should be based upon evidence taken from the physician's records.  Victory v. Barnhart, 121 F. App'x 819, 823-24 (10th Cir. 2005).

Here, the ALJ did not explain the evidentiary basis for her finding except for the conclusory statement that the opinion has no basis in the record.  The court notes that Dr. Carson's report indicates plaintiff will miss more than four days' work a month because he has "good days" and "bad days." (R. 323).  If the ALJ is to assert the physician merely based his opinion on plaintiff's subjective complaints, she must explain how the evidence in this record, including the physician's records and treatment notes, provides a basis for that conclusion.  The Tenth Circuit "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." McGoffin, 288 F.3d at 1253 (citing Frey v. Bowen, 816 F.2d 508, 525 (10th Cir. 1987).  If the ALJ seeks to assert there is **no** basis for the physician's opinion, she must use the record evidence to demonstrate her conclusion.

The Commissioner argues that an ALJ may discount a treating physician's conclusory diagnosis which is based merely upon subjective complaints without objective medical evidence. (Comm'r Br. 11) (citing Edwards v. Sullivan, 985 F.2d 334, 337 (7th Cir. 1993)).  The court agrees with the Commissioner that it may be appropriate in certain circumstances to discount a treating physician's opinion which is based merely on subjective complaints and not on objective medical evidence.  However,

because the ALJ in this case did not support her findings with correct citation to their evidentiary basis, the court cannot determine whether this is such a case.

In Edwards, the court specifically noted that the ALJ had not presumed bias in the treating physician's opinion, but had found that the treating physician's findings lacked any evidentiary support in the medical evidence. Edwards, 985 F.2d at 337. Here, however, the treating physician supported his opinions with objective medical evidence (two abnormal sleep studies), and, as discussed above, the ALJ's evaluation of the sleep studies is erroneous. The sleep studies are objective medical evidence which may provide an evidentiary basis for the physician to find that plaintiff will have more than four "bad days" a month resulting from ineffective sleep caused by apnea, narcolepsy, or bradychardia. For the ALJ to find otherwise, she must support her finding with evidence and proper explanation.

These are errors requiring remand for a proper evaluation of the medical opinions, resolution of the ambiguities between the opinion of the state agency reviewers and that of the treating physician, and explanation of the bases for the ALJ's RFC assessment. Because the court finds remand is necessary, plaintiff may address any specific allegations not discussed herein to the Commissioner on remand.

**IT IS THEREFORE RECOMMENDED** that the decision be REVERSED and JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 13th day of September 2007, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**